UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**ROBERT DAVIS, et al.,**

      **Plaintiffs,**         **CIVIL ACTION NO. 06-CV-12534-DT**

**vs.**

                      **DISTRICT JUDGE JOHN FEIKENS**

**FINANCIAL ONE, et al.,**      **MAGISTRATE JUDGE MONA K. MAJZOUB**

      **Defendants.**
_____/

## REPORT AND RECOMMENDATION

**I.**    **RECOMMENDATION:** Defendant MTGLQ Investors' Motion for Summary Judgment filed on August 7, 2007 (docket no. 48) should be **GRANTED**.

**II.**    **REPORT:**

This matter comes before the Court on Defendant MTGLQ Investors' Motion for Summary Judgment filed on August 7, 2007. (Docket no. 48). Plaintiff Davis has filed a Response. (Docket no. 51). Defendant has filed a Reply brief. (Docket no. 54). The Court heard oral argument on October 9, 2007. This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 50). The matter is now ready for ruling.

    *A.*    *Factual Background and Claims*

This is an action in which several Plaintiffs allege fraud against several Defendants in the procurement of mortgage loans and the subsequent distribution of funds. All of the Defendants have been dismissed except for MTGLQ Investors (MTGLQ) which filed this Motion for Summary Judgment. Plaintiff Davis is the only Plaintiff making claims against MTGLQ. Plaintiffs' Amended

-1-

Complaint alleges that MTGLQ is involved with only two properties. These are the Maddelein Street, Detroit, property (¶¶ 24-44), and the 127 Thorpe Street, Pontiac, property (¶¶ 45-68).

Plaintiffs' Amended Complaint alleges that in April 2006 MERS, as nominee for MILA, was granted a mortgage on the Maddelein property by Plaintiff Davis. MERS then assigned its interest in the Davis Mortgage to MTGLQ, Investors in the same month. In May 2006 MTGLQ foreclosed and was granted a Sheriff's Deed.

The Amended Complaint also alleges that in October 2006 MERS, as nominee for MILA, was granted a mortgage on the Thorpe property by Plaintiff Davis. In April 2006 MERS assigned its interest to MTGLQ Investors. In May 2006 MTGLQ foreclosed and was granted a Sheriff's Deed.

Count I of the Amended Complaint is a RICO claim against Defendants Ajagbe (the mortgage broker), Reed Home Appraisals (which appraised the homes), and Financial One (which employed Ajagbe). Defendants allegedly defrauded, cheated and used false pretenses to cause Plaintiffs to mortgage their interest in the real property.

Count II charges Defendants Ajagbe, Financial One, and Reed Home Appraisals with fraud and misrepresentation. The fraud was allegedly in the appraisals and asking prices of the homes (which were allegedly appraised for more than they were worth) and in the distribution of the proceeds of the loans.

Count III is a civil conspiracy claim against Defendants Financial One, Ajagbe, and Reed.

Count IV is an unjust enrichment claim against Ajagbe for obtaining money from the closings without proper entitlement to it.

Count V is for Declaratory Relief and alleges that the mortgages and notes held by MILA and now MTGLQ, and others, were obtained based upon the misrepresentations of material facts by virtue of the appraisals and distribution of proceeds. The Plaintiffs' signatures on the mortgages and notes were allegedly obtained based on fraud in the factum/inducement by virtue of these misrepresentations. The mortgages held by MTGLQ are therefore void or voidable. Plaintiffs request that the Court enter judgment finding that the mortgages and notes are void.

Count VI is entitled Quiet Title. Plaintiffs allege that the interest of MTGLQ is a cloud on their title to the properties and that the mortgages are void or voidable. Plaintiffs request damages against other Defendants and an order discharging the mortgages held by Defendants MTGLQ and others.

*B.     Standard of Review*

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox County Sch. Sys.*, 205 F.3d. 912, 914-15 (6th Cir. 2000). Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Id.* A mere scintilla of evidence is insufficient to defeat a supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

C.  *Analysis*

   *1. Propriety of Summary Judgment*

Plaintiff Davis argues that consideration of Defendant's Motion for Summary Judgment is premature because no discovery has been conducted. However, he fails to identify any material issues of disputed fact upon which discovery is needed. In *Summers v. Leis*, 368 F.3d 881, 887 (6th Cir. 2004), the Sixth Circuit stated that an affidavit under Rule 56(f) is required from the party seeking discovery to show why discovery is required when a summary judgment motion is pending. Davis has not filed an affidavit or otherwise identified any issues on which discovery is needed. Therefore, the consideration of Defendant's Motion is proper.

   *2. Fraud*

The elements of fraud or fraudulent misrepresentation are: (1) the defendant made a material representation; (2) it was false; (3) when the defendant made the representation, he knew that it was false, or he made the representation recklessly, without any knowledge of its truth, and as a positive assertion; (4) the defendant made the representation with the intent that it should be acted on by the plaintiff; (5) the plaintiff acted in reliance on the representation; and (6) the plaintiff suffered injury as a result of his reliance on the representation. *Hord v. Environmental Research Inst. of Michigan*, 617 N.W.2d 543, 546 (Mich. 2000).

Plaintiff contends that Ajagbe was the one who committed the fraud in this case. He seeks to hold MTGLQ liable for Ajagbe's actions through agency and contract law even though there is no allegation that either MTGLQ or its assignor, MILA, knew about or was involved in Ajagbe's fraudulent acts. Plaintiff argues that Ajagbe was the agent of MILA. He next contends that MTGLQ stands in the shoes of MILA and therefore is liable for fraud the same as MILA.

Defendant's primary argument is that it received the mortgages through assignment from MILA as a bona fide purchaser (BFP) and was not involved in the alleged fraudulent acts. Therefore, Defendant contends that it cannot be divested of its mortgage lien interest. The only authority Plaintiff cites for the proposition that Ajabge was MILA's agent is the Michigan statute defining "mortgage broker." Mich. Comp. Laws § 445.1651a(l)(ii) (one who directly or indirectly serves or offers to serve as an agent for a person who makes or offers to make mortgage loans). The facts alleged in Plaintiffs' Amended Complaint which might show an agency relationship between MILA and Ajagbe are also meager. The Amended Complaint alleges that Ajagbe was the employee of and mortgage broker for Financial One, not MILA. (Docket no. 18 ¶¶ 6, 16). It does not allege that Ajagbe was the agent of MILA. The mortgages at issue do show that MILA is the lender for these transactions. (Docket no. 51, exhibits A, E). Plaintiff's showing of agency is therefore weak. However, because Defendant's primary argument assumes that Ajagbe could have been the agent of MILA,[1] the Court will do likewise.

Assuming that the fraudulent acts of Ajagbe may imputed to MILA, Defendant contends that because it is a BFP its interest in the mortgages is secure. Defendant cites multiple Michigan cases which stand for the proposition that a BFP of a mortgage may not be divested of that interest even if its assignor obtained its interest through fraud. A good-faith or bona fide purchaser is one who purchases without notice of a defect in the vendor's title. *Oakland Hills Dev. Corp. v. Lueders Drainage Dist.*, 537 N.W.2d 258, 264 (Mich. Ct. App. 1995). Plaintiff does not dispute that Defendant is a BFP of both mortgages. In *Tapert v. Lehmann*, 243 N.W. 256 (Mich. 1932), the plaintiff was the assignee of a real estate mortgage and sought foreclosure against the defendants.

---

[1] Defendant does argue that Ajagbe was not its agent. (Docket no. 54 at 3). The Court agrees that Plaintiff has failed to make this showing.

Defendants claimed that the plaintiff's assignor was guilty of fraud and that the mortgage should be set aside. The court found that plaintiff was a BFP. The court affirmed the decree of foreclosure. In *Jones v. Titus*, 175 N.W. 257 (Mich. 1919), the plaintiff sued to set aside a mortgage and to restrain foreclosure by defendants. Plaintiff had been defrauded by a third party but defendant was a BFP of the mortgage from a bank that received it from the third party. The court affirmed the decree for foreclosure of the mortgage. In *Frank v. Brown*, 238 N.W. 237 (Mich. 1931), plaintiff sued to foreclose a real estate mortgage which was given to secure a note. The principal claim was fraud but plaintiff was a BPF who was protected against cancellation to the extent of his bona fide investment. The decree of foreclosure was awarded to plaintiff. Finally, in *Johnson-Wilson v. Styburski*, 2000 WL 33417371 (Mich. Ct. App. June 27, 2000), plaintiff executed a mortgage in favor of a mortgage company but rescinded the transaction in a timely manner. The mortgage company, however, later sold its interest in the mortgage to defendants. Plaintiff filed suit to quiet title claiming that the mortgage company redated the original, rescinded mortgage and assigned it to defendants without her knowledge or consent. The court found that defendants were BFP's of the mortgage for plaintiff's property. The court affirmed the grant of summary disposition for defendants.

Plaintiff does not discuss or in any way attempt to distinguish these cases from the present action. He relies solely on the general contract law principal that an assignee stands in the position of the assignor, possessing the same rights and being subject to the same defenses. *See Burkhardt v. Bailey*, 680 N.W.2d 453 (Mich. Ct. App. 2004). In *Burkhardt*, the assignor was found not to have assigned any interest in a mortgage because the mortgage had already been discharged. There is no allegation in the present action that either mortgage was discharged at the time Defendant received

its interest. Therefore, *Burkhardt* does not contradict the earlier cases which clearly hold that a BFP of a non-discharged mortgage without notice of underlying fraud is not affected by a borrower's defense to the original lender.

Accordingly, even if MILA took its interest through Ajagbe subject to a fraud defense, Defendant took its interest as a BFP free of any such defense. Plaintiff's argument that it may hold Defendant liable for Ajagbe's fraud should be rejected.

### 3. Forgery

Plaintiff next contends that his signature on the mortgages was obtained by fraudulent procurement which constitutes forgery and that a BFP can never exist on a forged instrument. Plaintiff relies on *Horvath v. National Mortgage Co.*, 213 N.W. 202 (1927). *Horvath* stands for the proposition that "where a genuine signature to an instrument is procured by some trick or device, without intent on the part of the party signing to execute such an instrument, the signature thereto will be treated in law as a forgery." *Leidel v. Ballbach*, 75 N.W.2d 860, 863 (Mich. 1956). The result addressed in *Horvath* is usually accomplished by the manipulation of a number of documents or the substitution of one instrument for another in such a way that the signature on one was procured where the intent was to sign another. *Id*. Plaintiff does not allege or present any facts showing that he did not intend to sign the mortgages at issue in this case. His claim is that he "only signed the Mortgages believing they represented not only the true purchase price of the homes, but the appropriate value of the home." (Docket no. 51 at 12). He claims that both were not true. However, such misrepresentations do not cause his signature on these mortgages to be forgeries under Michigan law. *Leidel*, 75 N.W.2d 860. The holding of *Horvath* therefore does not apply here. Plaintiff has failed to show that his signature on the mortgages were forgeries.

*4. Real Estate Settlement Procedures Act*

Plaintiff argues as his last contention that the mortgages at issue are void because of violations of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601, et seq. Plaintiff relies upon section 2603 which requires that the borrower be presented at or before settlement a form (HUD-1) itemizing all charges imposed upon the borrower and seller in connection with the settlement. Plaintiff relies on cases stating generally that the use of "shall" in a statute denotes something that is mandatory and that failure to conform to a mandatory procedure renders the activity a nullity. However, Plaintiff fails to provide any authority, in the statute or in case law, showing that a failure to provide this statement to a borrower causes the mortgage to be void. This Court as well has found no such authority. The Court also notes that Plaintiff's Amended Complaint fails to allege that the HUD-1 form was not made available to him. His allegations may be read to state that he did not sign the document, but this is a different matter from the document not being made available to him at or before settlement. Therefore, Plaintiff's final argument should be rejected.

### III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health*

& *Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.


Dated: October 10, 2007                s/ Mona K. Majzoub
                                       MONA K. MAJZOUB
                                       UNITED STATES MAGISTRATE JUDGE


## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Date: October 10, 2007                 s/ Lisa C. Bartlett
                                       Courtroom Deputy